TAMIAMI PARTNERS, LTD. by and through its general partner TAMIAMI DEVELOPMENT CORPORATION, Plaintiff,

v.

MICCOSUKEE TRIBE OF INDIANS OF FLORIDA, Business Council of Miccosukee Tribe of Indians of Florida, Miccosukee Tribal Gaming Agency, Miccosukee Tribal Court, Billy Cypress, Jasper Nelson, Jimmie Bert, Max Billie, Henry Bert, Andy Buster, and Minnie Bert Defendants.

No. 92–0489–Civ.

United States District Court, S.D. Florida.

Feb. 28, 1994.

Sanford L. Bohrer & Susan H. Aprill, Miami, Florida, for plaintiff.

Dexter W. Lehtinen, Miami, Florida, for defendants.

## ORDER ON DEFENDANTS' MOTIONS TO DISMISS

HIGHSMITH, District Judge.

THIS CAUSE came before the Court upon the following motions:

(1) Defendant Miccosukee Tribal Court's motion to dismiss the amended complaint; and

(2) Motion of Defendants Miccosukee Tribe of Indians of Florida, Miccosukee Business Council, Miccosukee Tribal Gaming Agency, Billy Cypress, Jasper Nelson, Jimmie Bert, Max Billie, Henry Bert, Andy Buster, and Minnie Bert to dismiss the amended complaint.

For the reasons stated below, the Court grants the Miccosukee Tribal Court's motion to dismiss, and grants in part and denies in part the remaining defendants' motion to dismiss, as follows: the Court grants the motion as to Defendants Miccosukee Tribe of Indians of Florida, Miccosukee Business Council, and Miccosukee Tribal Gaming Agency; the Court denies the motion as to Defendants Billy Cypress, Jasper Nelson, Jimmie Bert, Max Billie, Henry Bert, Andy Buster, and Minnie Bert.

## PROCEDURAL AND FACTUAL BACKGROUND

On February 27, 1992, Plaintiff Tamiami Partners, Ltd. ("TPL"), a non-Indian entity, commenced this action with the filing of a verified complaint for equitable relief against the Miccosukee Tribe of Indians of Florida ("Tribe"). In 1989, the Tribe and TPL's predecessor in interest, Tamiami Development Corporation, had entered into a management agreement for the operation of a bingo gaming facility, in accordance with the provisions of the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. § 2701, *et seq.* IGRA permits federally recognized Indian tribes, such as the Miccosukee Tribe, to establish gaming activities on their lands. 25 U.S.C.A. § 2710 (West Supp. Pamphlet 1993). The law also permits tribes to enter into management contracts for the operation of bingo and similar games. 25 U.S.C.A. § 2711 (West Supp. Pamphlet 1993).

Pursuant to these legislative provisions and the terms of the management agreement, Tamiami Development Corporation acquired a tract of land for the purpose of building a gaming hall and deeded such land to the United States in trust for the Tribe. At the time of the commencement of this action, TPL was operating the bingo gaming facility, known as Miccosukee Indian Bingo, which was built on the deeded land. The management agreement between TPL and the Tribe includes an arbitration provision for the settling of disputes and controversies arising from the agreement. In a separate provision of the agreement, the Tribe has consented to suit in the United States District Court for the Southern District of Florida, by waiving its sovereign immunity for the purpose of enforcing the terms of the agreement, should the Tribe fail to participate in arbitration or fail to abide by the terms of an arbitration award.

Notwithstanding these contract provisions, on January 28, 1992, the Tribe notified TPL that the management agreement would terminate in thirty days. In addition, on February 26, 1992, the Tribe filed a Statement of Claim in the Miccosukee Tribal Court, seeking declaratory and injunctive relief in the form of an order declaring that the management agreement was terminated; directing the Tribe to assume control of the bingo operation; enjoining TPL from interfering with such assumption; and directing the tribal police to enforce the order. (Statement of Claim, *Miccosukee Tribe of Indians of Florida v. Tamiami Partners, Ltd.,* Case No. CV. 92–07 (Miccosukee Court)). In the verified complaint filed before this Court, TPL sought a declaratory judgment that the Tribe was bound by the arbitration provisions of the management agreement. TPL also sought preliminary and injunctive relief ordering the Tribe to arbitrate and preventing the Tribe from assuming control of the bingo operation during the pendency of the arbitration proceedings.

### Act I

From the outset, this action has been punctuated by emergency requests for relief from TPL. At the beginning of the litigation, TPL sought the immediate issuance of a preliminary injunction compelling arbitration and preventing the Tribe from impeding TPL's operation of the bingo games. On Friday, February 28, 1992, after conducting an emergency hearing, the Court issued a temporary restraining order maintaining the status quo. The following Monday, March 2, 1992, the Court resumed the emergency hearing. On March 5, 1992, the Court issued the first of three omnibus orders.

In that order, the Court addressed the issue of its jurisdiction over the action, which TPL had invoked in the verified complaint merely by referring to the federal question jurisdiction statute, 28 U.S.C. § 1331. Because the Statement of Claim filed in tribal court had been appended to TPL's verified complaint, the Court was cognizant of the pending tribal court action, and of the fact that such action was almost a mirror image of the one before the Court. Relying on *National Farmers Union Ins. Co. v. Crow Tribe of Indians,* 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985), the Court determined that the case before it presented a federal common law question; namely, the exercise of tribal court judicial power over non-Indians. The Court, however, chose to abstain from exercising such federal question jurisdiction by applying the doctrine of exhaustion of tribal remedies, as articulated in *Iowa Mut. Ins. v. LaPlante,* 480 U.S. 9, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987). Accordingly, the Court vacated the March 2, 1992 temporary restraining order; denied TPL's motion for preliminary injunctive relief; and stayed the action pending the occurrence of any of the following three events: exhaustion of tribal remedies; exercise of self-help on the part of the Tribe to take over the bingo operation; or failure on the part of the Tribe to provide two business days' notice prior to taking any action pursuant to an order of the tribal court.

### Act II

After the stay had been in effect for a little over four months, TPL returned before this Court on July 21, 1992, again seeking emergency injunctive relief. This time, TPL sought an order enjoining the Tribe from exercising self-help to terminate the management agreement. The basis for TPL's re-

quest was the sudden, mass denials of license applications submitted by TPL employees pursuant to the Tribe's licensing requirements. On Friday, July 24, 1992, after conducting an emergency hearing, the Court lifted the stay of the action and granted TPL temporary injunctive relief pending its review of the licensing process. For purposes of this review, the Court held evidentiary hearings on August 4 and 5, 1992. Shortly thereafter, on August 19, 1992, the Court issued its second omnibus order.

In that order, the Court determined that the Tribe's licensing process was arbitrary and capricious. Nevertheless, after conducting a thorough review of the Indian Gaming Regulatory Act, under whose provisions the Tribe had enacted its licensing ordinance, the Court found no statutory grant of jurisdiction to review the licensing process undertaken by the Tribe. Additionally, the Court considered the Tribe's sovereign immunity from suit in the conduct of a governmental function such as licensing, in light of the United States Supreme Court's pronouncements in *Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 102 S.Ct. 894, 71 L.Ed.2d 21 (1982) and *Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 498 U.S. 505, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991). The Court found that the Tribe's narrow waiver of sovereign immunity contained in the management agreement did not extend to the licensing process. The Court concluded, therefore, that it lacked jurisdiction to grant the relief sought by TPL. Accordingly, the Court reinstated the stay of the action under the same terms that had been imposed in the first omnibus order.

Around the time of TPL's second request for federal court relief, the Miccosukee Tribal Court issued a ruling in the parallel case. In an order dated July 16, 1992 (a copy of which TPL filed with the Court immediately upon receipt on July 23, 1992), the tribal court determined that it had jurisdiction over the dispute between TPL and the Tribe, directed the parties to initiate arbitration proceedings pursuant to the management agreement's arbitration clause, and retained jurisdiction over the action, pending the outcome of the arbitration proceedings.[1] On August 5, 1992, the Tribe filed a notice of compliance with the tribal court order and announced its intention to commence arbitration. In conformance with the tribal court order, TPL and the Tribe engaged in protracted arbitration proceedings.[2]

Notwithstanding the initiation of arbitration proceedings, on Friday, August 21, 1992, TPL sought leave from the Court to file a supplemental complaint. TPL's proposed supplemental complaint, also filed on August 21, 1992, sought an order requiring arbitration of the licensing dispute and enjoining the Tribe from utilizing the licensing process to impede TPL from operating the bingo games. Along with the motion seeking leave to supplement the complaint, TPL filed an emergency motion for a preliminary injunction granting the relief sought in the supplemental complaint. On this occasion, however, the Court was not available to entertain TPL's emergency request. On Sunday, August 23, 1992, Hurricane Andrew struck South Florida. The destruction wreaked by the storm not only disrupted the Court's calendar, it also caused the temporary closing of the bingo games, thereby forcing a short-lived truce in the dispute between TPL and the Tribe. After a return to business, on September 15, 1992, the Court denied TPL's motion for leave to supplement the complaint and denied TPL's emergency motion for preliminary injunction. On September 17, 1992, TPL filed an interlocutory appeal of the Court's ruling in the second omnibus order and the Court's denial of the motion for leave to supplement the complaint and the emergency motion for preliminary injunction.

### Act III

After a lull in the proceedings, TPL returned before the Court on April 13, 1993,

---

**1.** The tribal court's memorandum opinion articulating its rationale for these rulings was issued on August 7, 1992. *Miccosukee Tribe of Indians of Florida v. Tamiami Partners, Ltd.*, Case No. CV. 92–07 (Miccosukee Court, Aug. 7, 1992).

**2.** The proceedings culminated with an October 6, 1993 award and decision in favor of TPL issued by the TPL and neutral arbitrators, with the arbitrator appointed by the Tribe dissenting. The Court has not been informed of any further developments in this regard.

seeking an emergency order enjoining the Tribe from exercising self-help. TPL's request was prompted by the following actions on the part of the Tribe and its instrumentalities, all of which had occurred on that same day: the Tribe's denial of the gaming license applications submitted by TPL and by its principals, Cye Mandel and John Sisto; the Miccosukee Tribal Gaming Agency's issuance of an order appointing Kenneth Welt as conservator of the bingo operation and directing him to take control of the same; and the Miccosukee Tribal Court's issuance of an order in aid of enforcement of the gaming agency's order. Pursuant to these decrees, the Tribe immediately ordered Mandel and Sisto to leave the bingo hall; ordered the Miccosukee Indian Bingo accountant to turn over the bingo operation records to the conservator; and sought control of the bingo operation's bank accounts.[3]

At the conclusion of an emergency hearing held on April 15, 1993, the Court issued its third omnibus order, finding that the tribal court had exceeded its jurisdiction when it issued the order appointing the conservator, thereby rendering said order null and void.[4] The Court also found that the Tribe's licensing denials had been effected under the guise of its sovereign powers to, for all practical purposes, abrogate the management agreement which was still the subject of arbitration proceedings. The Court, therefore, declared all actions taken by the Tribe and its instrumentalities null and void; and ordered the parties to return to the status quo as it existed on April 12, 1993 and to preserve such status during the pendency of the ongoing arbitration proceedings. Pursuant to the Court's certification under 28 U.S.C.

§ 1292(b), the Tribe and the conservator immediately filed interlocutory appeals.[5]

### Intermission: The Appeal

On April 21, 1993, the Eleventh Circuit consolidated the three pending appeals in this action and prescribed an expedited briefing schedule. On August 16, 1993, the Eleventh Circuit issued its opinion on the consolidated appeals, reversing the undersigned's orders for lack of subject matter jurisdiction under the well-pleaded complaint rule. *Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians of Florida*, 999 F.2d 503, 508–09 (11th Cir.1993). "According to the well-pleaded complaint rule, federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Tamiami Partners*, 999 F.2d at 507 (citations omitted).

In the view of the Eleventh Circuit, "Under 28 U.S.C. § 1331, the district court only had subject matter jurisdiction to hear challenges to the tribal court's jurisdiction after a full opportunity for tribal court determination of jurisdictional questions." *Id.* at 508 (citing *National Farmers Union Ins. Co. v. Crow Tribe of Indians*, 471 U.S. 845, 856–57, 105 S.Ct. 2447, 2453–54, 85 L.Ed.2d 818 (1985)).[6] After reviewing the verified complaint and the proposed supplemental complaint, the Eleventh Circuit determined that these pleadings did not present such a federal question, but, merely, a breach of contract claim. Similarly, the Eleventh Circuit found no federal question contained in TPL's emergency motions for injunctive relief filed on February 27, 1992, July 21, 1992, and August 21, 1992. The Eleventh Circuit found, however, that two of TPL's legal memoranda, which were filed in the Court record on September 16, 1992, presented, for the first

---

3. The Tribe had to obtain a state court order requiring the bank to turn over the accounts before gaining control of the funds.

4. Although the tribal court order was entitled "Order in Aid of Enforcement of Tribal Gaming Agency's Order Appointing Conservator," the order stated, *inter alia*, "It is the intent of this Court in appointing a Conservator to fulfill the obligations of the Tribe under the Indian Gaming Regulatory Act and tribal law, as well as to preserve and protect [Miccosukee Indian Bingo] as an ongoing business operation." *In re Conser-*

*vatorship for Miccosukee Indian Bingo*, Case No. CV. 93–11 (Miccosukee Court, Apr. 13, 1993).

5. Upon the Tribe's refusal to comply with the Court's April 15, 1993 order, the Court found the Tribe in civil contempt after a hearing held on April 20, 1993. The following day, however, the Eleventh Circuit stayed the Court's third omnibus order during the pendency of the appeals, and directed the clerk to expedite these appeals.

6. The Court notes that this is the precedent upon which it relied for its finding of federal question

time, a federal question.[7]

In light of these findings, the Eleventh Circuit stated:

> Now that we have reviewed the record in this case, we are aware that when the court entered *the third order on August 21, 1992*, events had occurred and evidence was in the record that suggested a basis for district court jurisdiction. The district court did not have jurisdiction, however, because although the evidence was present, neither the complaint nor the supplemental complaint had sufficient allegations to meet the standard for district court jurisdiction. Because we are now aware of facts which suggest that the district court could have jurisdiction if the case arose today, we remand the case to the district court with directions that the district court dismiss this action unless one of the present parties files a complaint or other pleading which properly alleges jurisdiction. If such a complaint or petition is filed within thirty days of the date of remand, the district court shall proceed to frame and determine the issues in the usual manner.

*Tamiami Partners*, 999 F.2d at 508 (emphasis added).

The Court does not mind noting that the italicized portion of this passage of the Eleventh Circuit's opinion has made the Court's task on remand more difficult than would ordinarily be expected. As can be gleaned from the foregoing review of the proceedings prior to appeal, the Court did not enter any order on August 21, 1992. The Court entered the second omnibus order on August 19, 1992, and the third omnibus order on April 15, 1993. Therefore, the Eleventh Circuit's reference to the Court's entry of the third order on August 21, 1992 creates an ambiguity concerning which facts in the rec-

ord would support federal question jurisdiction.

At a status conference held on October 26, 1993, the Court sought counsel's assistance in resolving this uncertainty. As might be expected, counsel for TPL and for the Tribe proposed differing interpretations of this reference. According to counsel for TPL, the passage's mention of the third order clearly refers to the third omnibus order, dated April 15, 1993, and the reference to August 21, 1992 is merely a deviation in the chronology. (Transcript of Status Hearing on October 26, 1993, at 5.) According to counsel for the Tribe, however, the Court should disregard the reference to the third order and focus on the Eleventh Circuit's earlier, explicit reference to September 16, 1992 as the first date in the record where it found indicia of federal question jurisdiction. (Transcript of Status Hearing on October 26, 1993, at 15.) The Court finds no assistance in either side's interpretation. As previously noted, the legal memoranda filed in the Court record on September 16, 1992 actually pertain to earlier proceedings. Because the Eleventh Circuit found the indicia of jurisdiction in these memoranda, the Court concludes that jurisdictional facts were present before the Court as of the earliest service date of these pleadings; namely, March 2, 1992.

### Act IV

Pursuant to the Eleventh Circuit's instructions, TPL filed an amended complaint on September 14, 1993. In the amended complaint, TPL asserts claims not only against the Tribe itself, but also against its various agencies and instrumentalities; namely, the business council, the gaming agency, and the tribal court. In addition, TPL asserts claims against the various individuals who hold offices within such organizations.[8] The amend-

jurisdiction in the first omnibus order.

7. A close review of the Court record reveals that these pleadings, although file-stamped September 16, 1992, relate to earlier proceedings before the Court. TPL's reply memorandum in support of motion for preliminary injunction (D.E. # 60A), bearing a service date of March 2, 1992, pertains to TPL's first request for injunctive relief, which the Court addressed in the first omnibus order. TPL's supplemental memorandum in support of its motion for injunctive relief (D.E. # 59), bearing a service date of August 8, 1992, pertains to TPL's second request for injunctive

relief, which the Court addressed in its second omnibus order. Due to the emergency nature of the proceedings, and the voluminous filings by the parties, some documents did not become incorporated into the Court record until well after the associated hearings.

8. The amended complaint also named the conservator as a defendant. On October 12, 1993, however, the tribal gaming agency issued an order terminating the conservatorship and requiring the conservator to turn over to the Tribe custody and control of the conservatorship res. Therefore, pursuant to TPL's motion, the Court

ed complaint recounts all of the events in this litigation, and prays for declaratory and injunctive relief. It seeks declaratory relief in the form of an order adjudging that the defendants exceeded their jurisdiction and sovereign powers in their actions toward TPL and the bingo operation. It seeks injunctive relief in the form of an order declaring null and void the April 13, 1993 orders issued by the gaming agency and the tribal court, and requiring the Tribe, the gaming agency and the conservator to turn over to TPL its share of revenues pursuant to the agreement, as well as a $50,000 advance made by TPL to the Tribe in April 1993.

To cure its prior failure to comply with the well-pleaded complaint rule, TPL included in the amended complaint the following issues as predicates for the Court's federal question jurisdiction under 28 U.S.C. § 1331:

(1) Whether the Tribe's actions in effectively abrogating the management agreement (in purported furtherance of its governmental purposes through its legislative, regulatory, and judicial bodies) exceeded the Tribe's sovereign powers, violated IGRA, or violated the Commerce Clause?

(2) Whether the Tribe's actions in denying gaming licenses to TPL and its principals, and subsequently evicting them from the gaming facility without affording them due process (again, by acting through the Tribe's legislative, regulatory, and judicial bodies) exceeded the Tribe's sovereign powers, violated IGRA, or violated the Commerce Clause?

(3) Whether the individual defendants acted beyond the authority that the Tribe is capable of bestowing upon them under federal laws defining the sovereign powers of Indian tribes?

(4) Whether the tribal court or its judges exceeded their jurisdiction or sovereign powers:

— in asserting jurisdiction over the disputes between the Tribe and TPL?

— by issuing the order in aid of jurisdiction, dated April 13, 1993, which resulted in TPL's eviction, the installation of the conservator, and the conservator's withholding of TPL's share of its income under the management agreement, all without prior notice or post-eviction opportunity to be heard?

In response to the amended complaint, all of the defendants have moved for dismissal. The tribal court seeks dismissal for lack of subject matter jurisdiction and/or for failure to state a claim upon which relief can be granted. In a separate motion, the remaining defendants seek dismissal for lack of subject matter jurisdiction and further argue that the amended complaint is barred by sovereign immunity as to them.[9]

## STANDARD OF REVIEW FOR MOTIONS TO DISMISS

*Fed.R.Civ.P.* 12(b)(1) permits the presentation, by way of motion, of the defense of lack of jurisdiction over the subject matter. "A motion to dismiss for lack of jurisdiction may be decided by the district court on one of three bases: the complaint alone, the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ynclan v. Department of Air Force,* 943 F.2d 1388, 1390 (5th Cir.1991) (citing *Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981)).

*Fed.R.Civ.P.* 12(b)(6) permits the presentation, by way of motion, of the defense of failure to state a claim upon which relief can be granted. To state a claim, *Fed.R.Civ.P.* 8(a) requires, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief."

dismissed the conservator from this action at the status hearing held on October 26, 1993.

**9.** The Court notes that each of the two motions contains a statement incorporating by reference the other motion's arguments. The Court, however, declines such a sweeping invitation to extrapolate beyond the contents of each motion. In particular, the Court notes that the tribal

court did not explicitly raise the issue of sovereign immunity in its motion to dismiss. Moreover, the United States Supreme Court in *National Farmers Union* makes no mention of sovereign immunity in the context of challenges to tribal court jurisdiction. The Court, therefore, does not consider the issue of sovereign immunity as to the tribal court.

The court must "take the material allegations of the complaint and its incorporated exhibits as true, and liberally construe the complaint in favor of the Plaintiff." *Burch v. Apalachee Community Mental Health Services, Inc.*, 840 F.2d 797, 798 (11th Cir.1988), *aff'd sub nom, Zinermon v. Burch*, 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). The law in this Circuit is well-settled that "the 'accepted rule' for appraising the sufficiency of a complaint is 'that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *SEC v. ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir.1988), *cert. denied sub nom, Peat Marwick Main & Co. v. Tew*, 486 U.S. 1055, 108 S.Ct. 2822, 100 L.Ed.2d 923 (1988) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957)). The moving party bears a heavy burden. *St. Joseph's Hosp., Inc. v. Hospital Corp. of America*, 795 F.2d 948, 953, *reh'g denied*, 801 F.2d 404 (11th Cir.1986).

## DISCUSSION

The Court first addresses the tribal court's motion to dismiss, which relies upon two grounds: lack of subject matter jurisdiction, pursuant to *Fed.R.Civ.P.* 12(b)(1); and failure to state a claim upon which relief can be granted, pursuant to *Fed.R.Civ.P.* 12(b)(6). After considering these issues, the Court addresses the remaining defendants' motion to dismiss for lack of subject matter jurisdiction, pursuant to *Fed.R.Civ.P.* 12(b)(1), and these defendants' invocation of sovereign immunity as a bar to the Court's jurisdiction.

### 1. The tribal court's motion to dismiss for lack of subject matter jurisdiction.

■ In its motion to dismiss, the tribal court concedes that the following issue raised in the amended complaint properly presents a federal question: Whether the tribal court or its judges exceeded their jurisdiction or sovereign powers in asserting jurisdiction over the disputes between the Tribe and TPL?

The tribal court cannot take a contrary position in light of the Eleventh Circuit's recognition that such an issue supports federal court jurisdiction under the Supreme Court's holding in *National Farmers Union Ins. Co. v. Crow Tribe of Indians*, 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985). Moreover, the Eleventh Circuit has indicated that the facts in the record of this litigation would support the Court's assertion of federal question jurisdiction if such facts were alleged in a well-pleaded complaint. As previously discussed, the Eleventh Circuit found such indicia in legal memoranda submitted by TPL as early as March 2, 1992 and August 8, 1992 (but file-stamped on September 16, 1992). In those documents, TPL challenged the tribal court's assertion of jurisdiction over it in the case brought by the Tribe against TPL in tribal court, *Miccosukee Tribe of Indians of Florida v. Tamiami Partners, Ltd.*, Case No. CV. 92–07 (Miccosukee Court). Therefore, the Court concludes that TPL has properly alleged a basis for this Court's assertion of federal question jurisdiction in this action; namely, the exercise of tribal court judicial power over TPL, a non-Indian entity. *National Farmers Union*, 471 U.S. at 852, 105 S.Ct. at 2451 ("The question whether an Indian tribe retains the power to compel a non-Indian property owner to submit to the civil jurisdiction of a tribal court is one that must be answered by reference to federal law and is a 'federal question' under § 1331.").

The tribal court argues, however, that the Court lacks subject matter jurisdiction to address the companion *"National Farmers Union"* issue raised by TPL; i.e., whether the tribal court or its judges exceeded their jurisdiction or sovereign powers by issuing the order in aid of jurisdiction, dated April 13, 1993, which resulted in TPL's eviction, the installation of the conservator, and the conservator's withholding of TPL's share of its income under the management agreement, all without prior notice or post-eviction opportunity to be heard?

The tribal court advances the following arguments in support of its posture that the Court lacks jurisdiction over this question: first, the order in aid of enforcement issued by the tribal court on April 13, 1993 was merely supplemental to the tribal gaming agency's concurrent order; second, nothing would change even if the tribal court were to

vacate this order because the operative order was the one issued by the tribal gaming agency; and, finally, the tribal court has already vacated the order.[10]

The Court fails to see how these arguments bear upon the Court's recognized federal question jurisdiction over challenges to the assertion of tribal court judicial power over non-Indians. The tribal court cannot now seriously dispute that it asserted judicial power over TPL through the issuance of the order in aid of enforcement on April 13, 1993. Despite post-hoc interpretations advanced by the tribal court, the order explicitly states that the tribal court was appointing a "Conservator to fulfill the obligations of the Tribe under the Indian Gaming Regulatory Act and tribal law, as well as to preserve and protect [Miccosukee Indian Bingo] as an ongoing business operation." *In re Conservatorship for Miccosukee Indian Bingo,* Case No. CV. 93–11 (Miccosukee Court, Apr. 13, 1993). The appointment of the conservator resulted in the ouster of TPL from Miccosukee Indian Bingo, and that ouster remains in effect.[11] Therefore, the Court concludes that TPL has properly alleged the jurisdictional predicate for this Court's exercise of federal question jurisdiction over all of the tribal court's actions vis-a-vis TPL.

*2. The tribal court's motion to dismiss for failure to state a claim upon which relief can be granted.*

*(i). As to the tribal court's assertion of jurisdiction in Case No. CV. 92–07:*

■■■ The tribal court argues that the amended complaint does not state a claim for relief because its assertion of jurisdiction over the disputes between TPL and the Tribe in Case No. CV. 92–07 is correct, leav-

ing nothing for this Court to determine. As noted by the Eleventh Circuit, this Court has subject matter jurisdiction to "hear challenges to the tribal court's jurisdiction after a full opportunity for the tribal court determination of jurisdictional questions." *Tamiami Partners,* 999 F.2d at 508 (citing *National Farmers Union,* 471 U.S. at 856–57, 105 S.Ct. at 2453–54. The Eleventh Circuit added, "The tribal court's determination [of jurisdictional questions] is ultimately subject to review in the district court, but unless the federal court determines that the tribal court lacked jurisdiction, the federal court must defer to the tribal court and cannot allow relitigation of the issues resolved in the tribal court." *Tamiami Partners,* 999 F.2d at 508 n. 12 (citing *Iowa Mut. Ins. Co. v. LaPlante,* 480 U.S. 9, 19, 107 S.Ct. 971, 977, 94 L.Ed.2d 10 (1987)). This pronouncement stems from the doctrine of exhaustion of tribal remedies, which the Court applied in its first omnibus order.

According to the tribal court, TPL has not exhausted its tribal remedies in Case No. CV. 92–07 because it failed to raise federal law as a bar to tribal court jurisdiction in the tribal court proceedings.[12] The tribal court's memorandum opinion dated August 7, 1992, however, fully addresses the issue of its jurisdiction over TPL, the non-Indian defendant, from both federal law and tribal code perspectives. The Court concludes, therefore, that the tribal court has had a full opportunity to address the jurisdictional questions in Case No. CV. 92–07, thereby rendering the matter subject to federal court review.

*(ii). As to the tribal court's assertion of jurisdiction in Case No. CV. 93–11:*

10. The tribal court's order of October 12, 1993, vacating and withdrawing its order in aid of enforcement, is attached as Exhibit B to the defendants' opposition to TPL's motion for preliminary injunction (D.E. # 144). The order bears Case No. CV. 92–07, rather than Case No. CV. 93–11, under which the original order in aid of enforcement was issued. At the status hearing held by the undersigned on October 26, 1993, however, counsel for the defendants stated that this was merely a scrivener's error, and that the vacating order should have properly issued under Case No. CV. 93–11. (Transcript of Status Hearing on October 26, 1993, at 39–40.)

11. With the tribal gaming agency's termination of the conservatorship on the same day that the tribal court issued the order vacating its order in aid of jurisdiction, the Tribe assumed direct control over Miccosukee Indian Bingo.

12. In seeking dismissal of the tribal court action, TPL argued that the tribal court could not exercise jurisdiction over non-Indians under the provisions of the Miccosukee Code.

■ These proceedings in tribal court were limited to the issuance of the tribal court order in aid of enforcement on April 13, 1993, which was subsequently vacated and withdrawn on October 12, 1993. These orders were entered without prior notice to TPL, making it impossible for TPL to exhaust tribal remedies by challenging the tribal court's jurisdiction in tribal court.[13] Unlike the case addressing the contract dispute between TPL and the Tribe, therefore, the issue of the tribal court's jurisdiction was not explored by the tribal court with regard to this case. Nevertheless, exhaustion of tribal remedies has now been foreclosed by the tribal court's effective termination of this action. Therefore, the Court need not apply the doctrine of exhaustion of tribal remedies as to this action. This renders the matter subject to federal court review.

### 3. Mootness

■ The Tribe and its instrumentalities, however, have short-circuited the Court's consideration of these issues. As to Case No. CV. 92–07, the Tribe voluntarily dismissed the action on October 25, 1993. (Exhibit A to the defendants' opposition to TPL's motion for preliminary injunction, D.E. # 144.) Pursuant to the Tribe's voluntary dismissal, the tribal court is no longer asserting jurisdiction over TPL in that action. Moreover, the only exercise of the tribal court's jurisdiction over TPL in that case was through the order of July 12, 1992 compelling arbitration, and those proceedings are no longer ongoing. Similarly, as to Case No. CV. 93–11, the Court and the parties know that an adjudication of the tribal court's jurisdiction would rise to nothing more than an exercise in futility. Were the Court to declare the tribal court's order in aid of enforcement null and void for lack of jurisdiction, as it did in its third omnibus

order, the Tribe would continue to assert control over Miccosukee Indian Bingo under the guise of the tribal gaming agency's authority. Indeed, the tribal gaming agency's request that the tribal court vacate its April 13, 1993 order makes this clear.[14]

The Court concludes, therefore, that the issue of the tribal court's jurisdiction over TPL has been rendered moot by the termination of the tribal court proceedings, thereby requiring dismissal of this portion of the amended complaint under the "case or controversies" requirement of Article III of the United States Constitution. Accordingly, the Court grants the tribal court's motion to dismiss.

### 4. The remaining defendants' motion to dismiss for lack of subject matter jurisdiction:

■ The remaining defendants have filed a separate motion to dismiss for lack of subject matter jurisdiction, pursuant to *Fed. R.Civ.P.* 12(b)(1). These defendants argue that the Court's federal question jurisdiction is circumscribed to a review of tribal judicial power. Accordingly, they seek outright dismissal of all aspects of the amended complaint that do not challenge tribal court jurisdiction. A review of the case law does not support this narrow construction of federal question jurisdiction over exercises of tribal sovereign powers.

Initially, the Court notes that *National Farmers Union* stands for the proposition that the exercise of tribal judicial power over non-Indians presents *a* federal common law question, not the *only* federal common law question in this area. In the case below, *National Farmers Union Ins. Co. v. Crow Tribe of Indians*, 736 F.2d 1320 (9th Cir. 1984), the Ninth Circuit recognized that chal-

---

13. At the status hearing held on October 26, 1993, counsel for the defendants informed the Court that the order of April 13, 1993 was entered pursuant to a request from the conservator and vacated pursuant to an application on the part of the tribal gaming agency. (Transcript of Status Hearing on October 26, 1993, at 33 & 36–37.)

14. At the status hearing held on October 26, 1993, the Court asked counsel for TPL his position on precisely this issue. The Court asked Mr.

Bohrer, "If I find only that I have authority to simply review the exercise of jurisdiction by the tribal court, isn't this all a moot issue now?" Mr. Bohrer responded, "If that's the only jurisdiction you have, Your Honor, then that jurisdiction is, to some extent, gone." Mr. Bohrer added, "By vacating [the order], it's as if it didn't happen and my client should be able to walk back in. We all know that's not going happen." (Transcript of Status Hearing on October 26, 1993, at 58–60.)

lenges to tribal exercise of regulatory powers could state a claim arising under federal common law but concluded that challenges to tribal exercise of adjudicatory powers failed to state a federal question. *Id.* at 1323. The Supreme Court reversed, stating that challenges to tribal court jurisdiction *did* state a federal question. *National Farmers Union,* 471 U.S. at 857, 105 S.Ct. at 2454.

Numerous other federal cases involve similar challenges to tribal regulatory and/or legislative powers over non-Indians. *See e.g., Montana v. United States,* 450 U.S. 544, 547, 101 S.Ct. 1245, 1249, 67 L.Ed.2d 493 (1981) (challenge to an Indian tribe's power to regulate hunting and fishing by non-Indians on reservation lands); *Brendale v. Confederated Tribes & Bands of Yakima Indian Nation,* 492 U.S. 408, 414, 109 S.Ct. 2994, 2999, 106 L.Ed.2d 343 (1989) (challenge to imposition of zoning and land use tribal laws on non-members); *Native Village of Tyonek v. Puckett,* 957 F.2d 631, 634 (9th Cir.1992) (challenge to application of tribal ordinances to non-members); *Morongo Band of Mission Indians v. Rose,* 893 F.2d 1074, 1077–79 (9th Cir.1990) (same); *Chilkat Indian Village v. Johnson,* 870 F.2d 1469, 1473–75 (9th Cir. 1989) (same); *Cardin v. De La Cruz,* 671 F.2d 363, 365 (9th Cir.), *cert. denied,* 459 U.S. 967, 103 S.Ct. 293, 74 L.Ed.2d 277 (1982) (challenge to tribal regulation of a business); *Middlemist v. Secretary, Dept. of Interior,* 824 F.Supp. 940, 943 (D.Mont.1993) (challenge to application of tribal conservation laws to non-members). The Court concludes that TPL's amended complaint states a federal common law question as to the non tribal-court defendants; namely, whether these defendants exceeded tribal powers in their actions towards TPL.

*5. Sovereign immunity:*

■ The Court's jurisdictional inquiry as to these defendants does not end, however, with a finding of subject matter jurisdiction. A "plaintiff challenging tribal power in federal court must show: (1) a federal cause of action; and (2) a waiver of tribal sovereign immunity. If these two elements can be shown to exist, then 28 U.S.C. § 1331 provides a federal forum." K. Gover & R. Laurence *Avoiding Santa Clara Pueblo v. Martinez: The Litigation in Federal Court of Civil Actions Under the Indian Civil Rights Act,* 8 Hamline L.Rev. 497, 516 (1985). The relationship between subject matter jurisdiction and sovereign immunity is as follows:

Strictly speaking, ... the immunity defense available to the sovereign does not necessarily present, and should not be confused with the question of subject matter jurisdiction (citations omitted). The district court may have the power to adjudicate a claim against the sovereign under its general federal question jurisdiction, just as the court might equally have jurisdiction in an action against any other legal entity; but the court must find that such claim is not viable unless the sovereign has consented to be sued in that court in the same manner as another legal entity. Conversely, the sovereign may consent to be sued in a given case, but the district court may lack subject matter jurisdiction over the otherwise viable claim if no substantial federal question is presented, diversity is wanting, and no other statutory jurisdictional predicate is applicable.

*Homewood Corp. v. Kemp,* 786 F.Supp. 1315, 1317 (S.D.Ohio 1992) (quoting *Brewer v. Department of Housing & Urban Dev.,* 508 F.Supp. 72, 75 (S.D.Ohio 1980)).

*(i). As to the Tribe and its agencies:*

■ The United States Supreme Court has unequivocally found that Indian tribes possess sovereign immunity from suit. "Indian tribes are domestic dependent nations which exercise inherent sovereign authority over their members and territories. Suits against Indian tribes are thus barred by sovereign immunity absent a clear waiver by the tribe or congressional abrogation." *Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Oklahoma,* 498 U.S. 505, 507, 111 S.Ct. 905, 909, 112 L.Ed.2d 1112 (1991). "A waiver of tribal sovereign immunity cannot be implied but must be unequivocally expressed." *Bank of Oklahoma v. Muscogee (Creek) Nation,* 972 F.2d 1166, 1171 (10th Cir.1992) (citing *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 58, 98 S.Ct. 1670, 1676, 56 L.Ed.2d 106 (1978)). "An Indian tribe's immunity from suit extends to suits for declaratory and injunctive relief." *Imperial Granite Co. v. Pala Band*

*of Mission Indians,* 940 F.2d 1269, 1271 (9th Cir.1991) (citing *Santa Clara Pueblo,* 436 U.S. at 58, 98 S.Ct. at 1676). Taking into consideration the Tribe's cloak of sovereign immunity helps elucidate the Eleventh Circuit's statement that, "Under 28 U.S.C. § 1331, the district court *only* had subject matter jurisdiction to hear challenges to the tribal court's jurisdiction after a full opportunity for tribal court determination of jurisdictional questions." *Tamiami Partners,* 999 F.2d at 508 (emphasis added). Indeed, the Eleventh Circuit made this pronouncement at the conclusion of a discussion regarding the Tribe's sovereign immunity.[15]

■ The Court concludes, therefore, that the Tribe's sovereign immunity shields it from the allegations in the amended complaint regarding the exertion of tribal power as to TPL. Moreover, the Tribe's sovereign immunity extends to the tribal business council and tribal gaming agency. *Weeks Construction, Inc. v. Oglala Sioux Housing Auth.,* 797 F.2d 668, 670–71 (8th Cir.1986). Therefore, the Court must dismiss the amended complaint as to the Tribe, the Miccosukee Business Council and the Miccosukee Tribal Gaming Agency. The Court recognizes the exception carved by the Tenth Circuit in *Dry Creek Lodge, Inc. v. Arapahoe & Shoshone Tribes,* 623 F.2d 682 (10th Cir.), *cert. denied,* 449 U.S. 1118, 101 S.Ct. 931, 66 L.Ed.2d 847 (1980), for asserting federal jurisdiction in cases involving non-Indians, where no other forum is available. The Tenth Circuit has narrowly construed this exception to situations where plaintiff's rights have been egregiously violated and tribal remedies were wrongfully denied to plaintiffs. *Seneca Cayuga Tribe of Oklahoma v. State ex rel. Thompson,* 874 F.2d 709, 715 n. 6 (10th Cir.1989). TPL argues that the circumstances in this case are clearly comparable to the egregious conduct and

denial of tribal remedies present in *Dry Creek.* The Eleventh Circuit, however, was cognizant of the facts in this case when it made the foregoing statement regarding the Court's only basis for assertion of jurisdiction. The Court concludes, therefore, that the Eleventh Circuit would not contemplate application of the *Dry Creek* exception to this case.[16]

*(ii). As to the individual defendants:*

■ Sovereign immunity does not necessarily extend to the named tribal officers. *Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Oklahoma,* 498 U.S. 505, 513, 111 S.Ct. 905, 912, 112 L.Ed.2d 1112 (1991) ("We have never held that individual agents or officers of a tribe are not liable for damages in actions brought by the State.") (citing *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)); *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 59, 98 S.Ct. 1670, 1677, 56 L.Ed.2d 106 (1978) (A tribal officer is not protected by the tribe's immunity from suit.) *See also Northern States Power Co. v. Prairie Island Mdewakanton Sioux Indian Community,* 991 F.2d 458, 460 (8th Cir.1993) (*Ex parte Young* applies to the sovereign immunity of Indian tribes.); *Tenneco Oil Co. v. Sac & Fox Tribe of Indians of Oklahoma,* 725 F.2d 572, 574–75 (10th Cir.1984) (Tribal officials were not protected by the Tribes's immunity.); Gover & Laurence, *supra* at 517 ("[T]he *Martinez* citation to *Ex parte Young* should allow the suit against a tribal official to proceed to the merits of whether the tribal official is acting inconsistently with federal law in performing the acts involved in the challenged tribal power.")

The amended complaint alleges that the named tribal officers have acted beyond the authority that the Tribe is capable of bestow-

15. The difficulties encountered by plaintiffs seeking redress from Indian tribes has been the focus of recent Congressional debate. For an up to date review of these efforts, see V. Limas, *Employment Suits Against Indian Tribes: Balancing Sovereign Rights and Civil Rights,* 70 Denv. U.L.Rev. 359, 387–89 (1993).

16. Indeed, in a recent opinion involving a case brought by the Seminole Tribe of Florida against the State of Florida, in which the state asserted

the sovereign immunity defense, the Eleventh Circuit stated, "The need for a forum, however, does not provide a federal court with the power to override state officials' constitutionally mandated sovereign immunity. Federal court jurisdiction is subject to and limited by the dictates of the Eleventh Amendment, and one judge's desire to give an aggrieved party a remedy does not enlarge it." *Seminole Tribe of Florida v. Florida,* 11 F.3d 1016, 1028 n. 14 (11th Cir.1994).

ing upon them under federal laws defining the sovereign powers of Indian tribes. Taking the facts alleged in the amended complaint as true, in accordance with the standard for motions to dismiss, leads the Court to the conclusion that the defense of sovereign immunity does not require dismissal of the amended complaint as to Billy Cypress, Jasper Nelson, Jimmie Bert, Max Billie, Henry Bert, Andy Buster, and Minnie Bert.

### 6. Exhaustion of tribal remedies as to claims against tribal officers:

In *National Farmers Union,* the Supreme Court explicitly made the exhaustion of tribal remedies doctrine applicable to a suit challenging tribal court jurisdiction. *National Farmers Union,* 471 U.S. at 857, 105 S.Ct. at 2454. The Supreme Court articulated three exceptions to the exhaustion requirement: (1) where the assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith; (2) where the action is patently violative of express jurisdictional prohibitions; and (3) where exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction. *Id.* at 857 n. 21, 105 S.Ct. at 2454. Courts have applied the exhaustion requirement, conditioned upon the applicability of the *National Farmers Union* exceptions, to suits challenging the actions of tribal officers. In *Kaul v. Wahquahboshkuk,* 838 F.Supp. 515, 517–18 (D.Kan.1993), the District of Kansas applied the exhaustion doctrine to dismiss a suit against the six members of a tribal council. The Kansas court considered, and rejected, the plaintiff's proffered reliance upon the *National Farmers Union* exceptions. *Id.* at 518. In *Superior Oil Co. v. United States,* 798 F.2d 1324, 1331 (10th Cir.1986), the Tenth Circuit similarly applied the *National Farmers Union* exhaustion requirement and instructed the district court "to undertake such further proceedings deemed necessary to determine whether the actions of the Navajo Tribe of Indians and the named individual Navajo defendants ... were taken in bad faith or motivated by a desire to harass such as to render exhaustion of Navajo Tribal Court remedies futile."

In its amended complaint, TPL invokes the *National Farmers Union* exceptions to support its argument that it need not exhaust tribal remedies. In particular, TPL asserts the bad faith exception articulated in *National Farmers Union.* TPL further asks the Court to rely on the existing record to verify the validity of its posture. For the present purposes, however, the Court need only take as true TPL's allegations of bad faith on the part of the Tribe. Taking such allegations as true, the Court must reject the tribal officers' contention that the amended complaint should be dismissed as to them for failure to exhaust tribal remedies. Accordingly, the Court concludes that TPL's action shall proceed as to the named tribal officers.

### CONCLUSION

Based on the foregoing considerations, it is hereby

ORDERED AND ADJUDGED that:

(1) The Miccosukee Tribal Court's motion to dismiss the amended complaint is GRANTED.

(2) The motion of the Miccosukee Tribe of Indians of Florida, Miccosukee Business Council, Miccosukee Tribal Gaming Agency, Billy Cypress, Jasper Nelson, Jimmie Bert, Max Billie, Henry Bert, Andy Buster, and Minnie Bert to dismiss the amended complaint is GRANTED IN PART AND DENIED IN PART. The motion is GRANTED as to the Miccosukee Tribe of Indians of Florida; the Miccosukee Business Council; and the Miccosukee Tribal Gaming Agency. The motion is DENIED as to Billy Cypress; Jasper Nelson; Jimmie Bert; Max Billie; Henry Bert; Andy Buster; and Minnie Bert.

(3) This action be and the same is hereby DISMISSED with prejudice as to Defendants Miccosukee Tribal Court; Miccosukee Tribe of Indians of Florida; Miccosukee Business Council; and Miccosukee Tribal Gaming Agency.

DONE AND ORDERED.